IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Roberto Beras,      Case No. 4:13 CV 971

         Petitioner,     AMENDED MEMORANDUM
                                             OPINION AND ORDER
     -vs-
                                             JUDGE JACK ZOUHARY
Joe Coakley, *Warden*,

         Respondent.

### INTRODUCTION

*Pro se* Petitioner Roberto Beras filed a Petition for Writ of Habeas Corpus (Doc. 1) under 28 U.S.C. § 2241 against Elkton Federal Correctional Institution Warden Joe Coakley. Petitioner contends his 2000 conviction in the United States District Court for the Southern District of New York on numerous counts of conspiracy to launder money, conspiracy to structure transactions and avoid currency reporting requirements, money laundering, and causing a financial institution to fail to file a currency transaction report, should be vacated in light of the U.S. Supreme Court's decisions in *United States v. Santos*, 553 U.S. 507 (2008) and *Cuellar v. United States*, 553 U.S. 550 (2008). For the following reasons, the Petition is denied.

Petitioner also filed a Motion to Proceed *In Forma Pauperis* (Doc. 2) and Motion for Appointment of Counsel (Doc. 3). The Motion to Proceed *In Forma Pauperis* is granted; the Motion for Appointment of Counsel is denied.

**BACKGROUND**

Petitioner was the vice president and co-owner of Dinero Express ("Dinero"), a licensed money remitter in New York City, which from 1994 to 1996, laundered tens of millions of dollars in narcotics proceeds. In exchange for commissions that totaled five percent of each transaction, Petitioner and his co-conspirators accepted cash deposits from area drug dealers and transferred those deposits from Dinero's headquarters to the drug dealers' international suppliers and associates. *See Beras v. United States*, 2013 WL 1155415, at * 1 (S.D.N.Y. 2013).

Dinero's money-laundering scheme consisted of four steps. First, drug dealers delivered their cash to Dinero's New York headquarters and Dinero gradually deposited the money in smaller amounts in its bank accounts throughout the United States. *Id.* at *3. Second, Dinero issued remittance invoices for fictitious transactions to the Dominican Republic in amounts small enough to avoid the currency reporting requirements. *Id.* Third, a Dominican peso supplier fulfilled the fictitious remittances by advancing local currency in the amount of the original deposit to Dinero's headquarters minus the commission to Dinero's Dominican office. Dinero's Dominican office forwarded the cash to the drug dealers' contacts in the Dominican Republic. *Id.* Finally, Dinero's New York office completed the transaction by transferring funds to the peso supplier's bank accounts in the United States. *Id.*

In April 2000, Petitioner was charged with 82 counts that included: conspiracy to launder money in violation of 18 U.S.C. § 1956(h); conspiracy to structure transactions and avoid currency reporting requirements in violation of 18 U.S.C. § 371; engaging in money laundering in violation of 18 U.S.C. § 1956(a)(2)(b); engaging in money laundering in violation of 18 U.S.C. § 1956(a)(3); structuring financial transactions in violation of 31 U.S.C. § 5324(a)(3) and 18 U.S.C. § 2; and

2

causing a financial institution to fail to file a currency transaction report in violation of 31 U.S.C. § 5324(a)(1) and 18 U.S.C. § 2. *Id.* at *1. In December 2000, a jury found Petitioner guilty on all 82 counts, and in November 2001, he was sentenced to 292 months of imprisonment and three years of supervised release. *Id.* at *2.

Petitioner asserts he is entitled to relief from his conviction under 28 U.S.C. § 2241 based on two recent cases from the United States Supreme Court, *United States v. Santos*, 553 U.S. 507 (2008) and *Cuellar v. Unites States*, 553 U.S. 550 (2008). He contends these cases changed key terms in the money-laundering statute under which he was convicted, making him actually innocent of the crimes.

### STANDARD OF REVIEW

Writs of habeas corpus under Section 2241 "may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). Section 2241 "is an affirmative grant of power to federal courts to issue writs of habeas corpus to prisoners being held 'in violation of the Constitution or laws or treaties of the United States.'" *Rice v. White*, 660 F.3d 242, 249 (6th Cir. 2011) (quoting 28 U.S.C. § 2241(c)). Because Petitioner is appearing *pro se*, the allegations in his Petition must be construed in his favor, and his pleadings are held to a less stringent standard than those prepared by counsel. *Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001). However, courts have broad discretion in structuring the terms of habeas relief. *Demis v. Sneizek*, 558 F.3d 508, 515 (6th Cir. 2009). Courts may dismiss petitions at any time or make any disposition as law and justice require, if it determines a petition fails to establish adequate grounds for relief. *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987).

#### ANALYSIS

In order to challenge the legality of his conviction or sentence, a federal prisoner must file a post-conviction motion under 28 U.S.C. § 2255 with the trial court. *Capaldi v. Pontesso*, 135 F.3d 1122, 1123 (6th Cir. 2003). A petition for writ of habeas corpus under Section 2241 allows a federal prisoner to challenge only the manner in which the sentence is being executed, such as the computation of sentence credits or parole eligibility, rather than the validity of the sentence itself. *United States v. Jalili*, 925 F.2d 889, 894 (6th Cir. 1999).

Section 2255(e) provides a narrow exception to this rule by permitting a prisoner to challenge the legality of a conviction through a Section 2241 petition where the remedy under Section 2255 is or was "inadequate or ineffective" to test the legality of the detention. This is a rigorous showing because circuit courts have only permitted petitioners who have effectively made claims of actual innocence to utilize Section 2241 as a way of circumventing Section 2255's filing restrictions on the filing of second or successive habeas petitions. *Martin v. Perez*, 319 F.3d 799, 804 (6th Cir. 2003) (citing *Charles v. Chandler*, 180 F.3d 753, 757 (6th Cir. 1999)). A Section 2255 remedy is not considered "inadequate or ineffective" simply because Section 2255 relief has already been denied, or because the petitioner is procedurally barred from pursuing relief under Section 2255, or because the petitioner has been denied permission to file a second or successive motion to vacate. *Charles*, 180 F.3d at 756. A prisoner's inability to use Section 2255 to challenge the legality of his detention, however, is not enough to prove inadequacy or ineffectiveness. *United States v. Peterman*, 249 F.3d 458, 461 (6th Cir. 2001).

The savings clause is limited to factual situations where, after a prisoner's conviction has become final, the Supreme Court reinterprets the terms of the statute under which he was convicted and such reinterpretation excludes his actions as a violation of the statute. *Martin,* 319 F.3d at 804.

4

Also, the savings clause applies only when a petitioner makes a claim of actual innocence. *Bannerman v. Snyder*, 325 F.3d 722, 724 (6th Cir. 2003). To establish actual innocence, a petitioner must demonstrate that "it is more likely than not that no reasonable juror would have convicted him." *Bousley v. United States*, 523 U.S. 614, 623–24 (1998). Actual innocence means factual innocence, not mere legal insufficiency. *Id.*

Factual innocence may be established by showing an intervening change in the law that establishes a petitioner's actual innocence. *Peterman*, 249 F.3d at 462. This may be achieved by demonstrating: (1) the existence of a new interpretation of statutory law, (2) issued after a petitioner had sufficient time to incorporate the new interpretation into his direct appeals or subsequent motions, (3) which is retroactive, and (4) which applies to the merits of the petition to make it more likely than not that no reasonable juror would have convicted him. *Wooten v. Cauley*, 677 F.3d 303, 307–08 (6th Cir. 2012).

Petitioner claims his remedy under Section 2255 is inadequate and ineffective to test his detention because he was time-barred from presenting his current claims in the Section 2255 motion he filed in the trial court on February 17, 2005. *Beras*, 2013 WL 1155415, at *4. Over the next four years, he filed seventeen supplements to his Section 2255 petition. *Id.* at *5. Because these supplements were filed well after the February 23, 2005 deadline for filing his Section 2255 petition, the court concluded the claims contained in the supplements were time-barred, unless they related back to claims asserted in the original petition.

Although the Supreme Court issued its decisions in *Santos* and *Cuellar* on June 2, 2008, Petitioner asserted substantially similar arguments in his Section 2255 supplements filed in June 2005, January 2007, and May 2008. *Id.* He also filed supplements in June 2008 and September 2009 citing *Santos* and *Cuellar*. *Id.* The district court determined the supplements did not assert

5

issues relating back to the original petition, and were therefore untimely. Furthermore, the court determined if those claims had been timely, Petitioner could not prove he had a merger problem because the Second Circuit already determined on direct appeal that Petitioner's convictions for money laundering under 18 U.S.C. § 1956 and for structuring funds under 31 U.S.C. § 5324(a)(3) were not "multiplicitious." *Id.* at \*9. The district court denied the Section 2255 petition in March 2013. Plaintiff claims because *Santos* and *Cuellar* were not decided until after his time to file a Section 2255 motion expired, his remedy under Section 2255 is inadequate and ineffective to address his current claims.

Petitioner argues he is actually innocent of money laundering because the Supreme Court in *Santos* issued a new interpretation of the term "proceeds" as "profits" in 18 U.S.C. § 1956. *Santos* is retroactive. *Wooten*, 677 F.3d at 308. He contends the crime of money laundering under 18 U.S.C. § 1956(a)(3) and the crime of structuring financial transactions in violation of 31 U.S.C. § 5324(a)(3) both require proof of the existence of a financial transaction, thus creating a merger problem. He claims the government is required under *Santos* to prove he intended to transport "profits," not just "gross receipts" to further a money laundering scheme. He contends the government did not prove this, and he is therefore actually innocent of money laundering.

*Santos* does not apply in this case because there is no merger problem. Petitioner argued to the Second Circuit on direct appeal that his convictions of money laundering under 18 U.S.C. § 956(a)(3) and structuring financial transactions under 31 U.S.C. § 5324(a)(3) presented a "merger problem" and violated the prohibition against double jeopardy. *Beras*, 2013 WL 1155415, at \*2. The Second Circuit rejected this argument, finding that each charge required proof of an element that the other did not. Because there is no merger problem in Petitioner's convictions, *Santos* does not apply.

6

Petitioner also argues he is actually innocent of money laundering because the Supreme Court in *Cuellar* issued a new interpretation of the term "design" in 18 U.S.C. § 1956(a)(2)(B)(i), which makes this statute inapplicable to him. This section, in relevant part, makes it a crime to attempt to transport "funds from a place in the United States to . . . a place outside the United States . . . knowing that the . . . funds involved in the transportation . . . represent the proceeds of some form of unlawful activity and knowing that such transportation . . . is designed in whole or in part . . . to conceal or disguise the nature, location, source, ownership, or control of the proceeds of specified unlawful activity." Because the Court in *Cuellar* interpreted "design" to mean purpose, the government was required to prove Petitioner (1) attempted to transport funds from the United States to the Dominican Republic, (2) knew these funds "represent[ed] the proceeds" of drug trafficking, and (3) knew such transportation was intended to conceal or disguise the nature, the location, the source, the ownership, or the control of the funds.

Here, unlike *Cuellar*, Petitioner's methods of transportation do not suggest the money was concealed only for the purposes of getting it from Point A to Point B. Indeed, Petitioner acknowledges the drug money was delivered to Dinero's New York headquarters, deposited slowly into various Dinero Bank accounts, transferred to the Dominican Republic using phony invoices, converted to local currency using a straw man, redeposited into Dinero accounts in the Dominican Republic, and then transferred to drug dealers in the Dominican Republic. This evidence suggests the transactions themselves were designed to conceal where the money came from, not where it was at a given moment. Consequently, *Cuellar* does not require a finding that Petitioner is actually innocent of money laundering. *See United States v. Warshak*, 631 F.3d 266, 322 (6th Cir. 2010).

Because Petitioner did not establish his actual innocence in the crime of money laundering, he cannot challenge his conviction under 28 U.S.C. § 2241.

7

**CONCLUSION**

Accordingly, this Court denies the Petition (Doc. 1); grants the Petitioner's Motion to Proceed *In Forma Pauperis* (Doc. 2); and denies Petitioner's Motion for Appointment of Counsel (Doc. 3). This action is dismissed under 28 U.S.C. §§ 2243 and 1915(e). This Court further certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

IT IS SO ORDERED.

                                         s/ *Jack Zouhary*
                                         JACK ZOUHARY
                                         U. S. DISTRICT JUDGE

                                         October 2, 2013